IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Melissa Mees on behalf of    :
herself and on behalf of all
others similarly situated,    :

      Plaintiff,            :

    v.                  :   Case No.  2:14-cv-142

Skreened, Ltd.,        :   JUDGE JAMES L. GRAHAM
                          Magistrate Judge Kemp
      Defendant.      :

<u>REPORT AND RECOMMENDATION</u>

This matter has been referred to the undersigned Magistrate Judge to issue a report and recommendation on final approval of the settlement.  For the reasons set forth below, the Court will recommend that final settlement approval be granted.

## I. <u>Background</u>

On February 7, 2014, Plaintiff Melissa Mees filed a class action complaint against Defendant Skreened, Ltd., alleging a claim under the Worker Adjustment and Retraining Notification ("WARN") Act of 1988, 29 U.S.C. §§2101-2109.  Specifically, Ms. Mees alleged that Skreened employed more than 100 employees who, collectively, worked a minimum of 4,000 hours per week and that Defendant effected a "mass layoff" as defined in the statute which resulted in the termination of employment of at least 50 employees and at least 33% of the employees at its facility, excluding part-time employees.  Ms. Mees alleged that, although the layoffs took place at two physical locations operated by Skreened, namely 2887 Silver Drive and 3005 Silver Drive, both located in Columbus, the two locations were a single facility for

purposes of the WARN Act.  She further alleged, <u>inter alia</u>, that
the affected employees did not receive 60 days' advance written
notice or pay for 60 days' wages and fringe benefits as required
by the WARN Act.

On March 26, 2014, Skreened filed its answer, denying any
liability under the WARN Act and claiming that the claims were
barred and/or limited by the unforeseeable business circumstances
exception to the WARN Act.  It also asserted that the claims were
barred and/or limited by the good faith compliance provisions of
the WARN Act.

On October 5, 2015, the parties filed a joint motion for
order "(1) preliminarily approving settlement agreement; (2)
approving form and manner of notice to the proposed settlement
class; (3) appointing class counsel; (4) appointing class
representative; (5) scheduling a final fairness hearing for the
final consideration and approval of the settlement; and (6)
finally approving the settlement." (Doc. 41).  In an Order
issued on October 7, 2015, the Court granted the joint motion,
preliminarily approving the settlement agreement.  The Court
certified a class for purposes of settlement only, finding that
the class is comprised of approximately 122 individuals listed on
Exhibit A to the settlement agreement.  The settlement class is
defined as:

> All former employees of Skreened, Ltd., who worked at or
> reported to 2887 Silver Drive, Columbus, Ohio, and/or
> 3005 Silver Drive, Columbus, Ohio, and who were
> terminated without cause from their employment as part of
> a mass layoff, occurring October 19, 2013, through
> January 17, 2014, and also including any former employee
> who resigned after October 19, 2013, through January 17,
> 2014, who do not file a timely request to opt out of the
> class.

(Doc. 42 at 4).  The settlement agreement provided, <u>inter alia</u>,
that:

[t]he settlement amount shall be equal to $50,000.00 and
shall be distributed by Class Counsel as follows: (a) the
sum of $2,000.00 to the Class Representative for her
services rendered in this action, from which no attorney
fees with be withheld (the "service Payment") and (b) the
remainder of $50,000.00, net one third attorneys' fees
and costs, allocated among the Class Members equally.
Defendants shall deliver the $50,000.00 settlement fund
to Class Counsel.  Defendant shall deliver $20,000 to
Class Counsel within ten days of final approval of the
Settlement Agreement by the Court. Thereafter, the
Defendant shall make monthly payments until the remaining
balance is paid in full with the final payment made no
later than February 1, 2016.

Id., Ex.3 at ¶9. The Court appointed Ms. Mees as the class
representative and The Gardner Firm, P.C. and Lankenau & Miller,
LLP as class counsel.  The Court approved the form and manner of
notice to the proposed settlement class.  Finally, the Court
referred this case to the undersigned Magistrate Judge to conduct
the fairness hearing on December 16, 2015 and to issue a report
and recommendation on final approval of the settlement.

This Court held the fairness hearing on December 16, 2015.
(Doc. 45).  Counsel for both parties were present at the hearing
and had an opportunity to be heard.  This Court has considered
the arguments made by counsel at the fairness hearing on behalf
of their respective clients, in addition to Ms. Mees' brief in
support of final approval of the preliminarily approved class
settlement agreement (Doc. 44).  The Court now considers whether
final settlement approval should be granted, including whether
the attorneys' fees as set forth in the settlement agreement are
reasonable.  The Court first addresses whether the proposed
settlement with the class is fair, reasonable, and adequate.
After doing so, the Court examines whether the attorneys' fees
set forth in the settlement agreement are reasonable.

II. Whether the Settlement is Fair, Reasonable, and Adequate

Federal Rule of Civil Procedure 23(e) governs settlements of

3

class actions.  It provides that the Court may approve a proposed settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In making its decision, the Court should consider the following factors: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." In re Polyurethane Foam Antitrust Litig., 2015 WL 7348208, *3 (N.D. Ohio Nov. 19, 2015), quoting International Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. General Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007).  An examination of each of these factors weighs in favor of final approval of the class settlement agreement in this case.

## A. Risk of Fraud or Collusion

Absent evidence to the contrary, courts presume that a class settlement is the result of arm's length negotiations and is not the product of fraud or collusion. See, e.g., IUE-CWA v. General Motors Corp., 238 F.R.D. 583, 598 (E.D. Mich. 2006)("Courts presume the absence of fraud or collusion unless there is evidence to the contrary").  Stated differently, "the courts respect the integrity of counsel and presume the absence of fraud and collusion in negotiating the settlement, unless evidence to the contrary is offered." Brent v. Midland Funding, LLC, 2011 WL 3862363, *15 (N.D. Ohio Sept. 1, 2011), citing 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions §11.51 (4th ed. 2002).  In addition, if the court finds that the settlement agreement is fair, then it may assume that there was no risk of fraud or collusion in negotiating the settlement. See IUE-CWA, 238 F.R.D. at 599.

4

In this case, counsel have represented that the settlement agreement is the result of arms' length, good faith negotiations which took place over the course of many months.  There is no evidence that the settlement agreement is the result of fraud or collusion, nor has any party to this case made an argument that fraud or collusion exists.  Further, as set forth below and recognized in the Court's October 7, 2015 Order preliminarily approving the proposed settlement agreement, the settlement agreement is fair.  Based on the foregoing, the Court assumes that there was no risk of fraud or collusion in negotiating the settlement.  Thus, this factor weighs in favor of final approval of the proposed settlement.

B. The Complexity, Expense, and Likely
Duration of the Litigation

This litigation has been ongoing for almost two years.  The issues are complex, given that the unforeseeable business circumstances defense to liability under the WARN Act asserted in this case would require an examination of causation and foreseeability.  An examination of foreseeability would require this Court to determine whether Skreened exercised such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market.  See, e.g., In re Advanced Accessory Sys., LLC, 443 B.R. 756, 763-64 (E.D. Mich. 2011)(examining the "unforeseeable business circumstances" exception to liability under the WARN Act).  As Ms. Mees' brief explains, "[t]his would involve substantial discovery and consideration of facts and evidence particular to the Defendant's operations and the industry in which it operates, and could require expert testimony."  (Doc. 44 at 9).  In addition to the expense and time incurred as a result of additional discovery and perhaps expert discovery, the parties likewise anticipate the need for significant motions practice, a

trial, and an appeal. Given these circumstances, this factor weighs in favor of final approval of the proposed settlement.

    C. <u>The Amount of Discovery Engaged in by the Parties</u>

The amount of discovery engaged in by the parties is a factor for consideration because, "[i]n order to realistically and accurately assess the strength of their case and the propriety of settlement, experienced attorneys need sufficient information." <u>Lonardo v. Travelers Indem. Co.</u>, 706 F. Supp.2d 766, 782 (N.D. Ohio Mar. 31, 2010), citing <u>In re Telectronics Pacing Sys., Inc.</u>, 137 F. Supp.2d 985, 1015 (S.D. Ohio 2001)(noting that sufficient discovery had taken place such that the settlement was negotiated with "the knowledge necessary to make an intelligent, informed decision in this matter"). In this case, the parties have engaged in substantial written discovery, including responses to Ms. Mees' requests for admission, interrogatories, and requests for production. Ms. Mees' counsel has reviewed "thousands of pages of documents." (Doc. 44 at 10). The parties also engaged in informal discovery, during which they exchanged information pertinent to the facts, claims, and defenses in this matter. Based upon the foregoing, the Court finds that counsel were afforded an adequate opportunity to assess the strengths and weaknesses of their respective cases and to make an informed decision regarding the settlement of this matter. Consequently, this factor weighs in favor of final approval of the proposed settlement.

    D. <u>The Likelihood of Success on the Merits</u>

An examination of the fairness of a settlement necessarily requires the Court to examine the likelihood of success on the merits if the litigation were to continue. <u>See International Union, United Auto., Aerospace, and Agr. Implement Workers of Am.</u>, 497 F.3d at 631. Although examination of this factor does not require the Court to resolve the outstanding legal or factual

issues on the merits, the Court cannot adequately assess the
fairness of the proposed settlement without "weighing the
plaintiff's likelihood of success on the merits against the
amount and form of the relief offered in the settlement." Id.,
quoting Carson v. American Brands, Inc., 450 U.S. 79, 88 n.14
(1981). In her brief in support of final approval, Ms. Mees
states that the settlement agreement strikes the right balance
between the likelihood of success on the merits and the relief
offered in the settlement. She explains that she faces the
following hurdles in seeking recovery: the need to demonstrate
that at least 50 employees (exclusive of part-time employees)
were terminated without cause, the need to demonstrate that two
distinct physical locations constituted a single site of
employment, and the need to persuade this Court to examine an
aggregate ninety-day period because there was no WARN triggering
event which took place within any thirty-day period. Ms. Mees
adds that she would need "to convince the Court to disregard
recall offers made to a number of employees, because without
their inclusion there are not enough full time employees let go
during the requisite period to trigger WARN coverage." (Doc. 44
at 7). She would also have to overcome the defenses raised in
the answer, which include the unforeseeable circumstances defense
in 29 U.S.C. §2102(b)(2)(A) and the good faith defense in 29
U.S.C. §2104(a)(4). Finally, Ms. Mees points to the fact that
Skreened's weak financial position puts her and other class
members at risk of receiving nothing if the litigation continues.
Based on the foregoing, there is substantial uncertainty as to
whether Ms. Mees could establish a prima facie case and whether
Skreened could prevail on its defenses. In addition, there is a
real risk that the class could recover nothing if this litigation
were to continue. Accordingly, the Court finds that this factor
weighs in favor of final approval of the proposed settlement.

E.  <u>The Opinions of Class Counsel and Class Representative</u>

At the fairness hearing and in the brief in support of final approval, class counsel and the class representative have made clear that they find the settlement amount to be reasonable.  Ms. Mees, the class representative, is represented by counsel with substantial experience in WARN Act cases.  Class counsel represent that the settlement agreement is reasonable and that they were "well-suited to have negotiated the best possible resolution in this case, which is embodied in the Settlement Agreement." (Doc. 44 at 11).  Based upon these representations, the Court finds that this factor weighs in favor of final approval of the proposed settlement.  <u>See Hainey v. Parrott</u>, 617 F. Supp.2d 668, 675 (S.D. Ohio 2007)(finding that experienced counsel's "opinion that the proposed settlement is fair, reasonable, and adequate is entitled to considerable weight").

F.  <u>The Reaction of Absent Class Members</u>

On October 9, 2015, the class notices were mailed to the last known address of each class member.  As the Court found in its October 7, 2015 Order, the form, substance, and delivery of the class notices were fair and reasonable and fairly apprised class members of the terms of the proposed settlement, how they could seek additional information, opt out of the settlement, or object to the settlement.  However, no class members have objected to the settlement agreement or opted out of the case. As this Court has observed, "[t]he small number of objectors is a good indication of the fairness of the settlement." <u>Connectivity Sys., Inc. v. National City Bank</u>, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011)(Watson, J.), quoting <u>Whitford v. First Nationwide Bank</u>, 147 F.R.D. 135, 141 (W.D. Ky. 1992) (citation omitted)(alteration in original).  Given that there are no objectors to the fairness of the class settlement, this factor weighs in favor of its final approval.

G. <u>The Public Interest</u>

Finally, the Court considers the public interest in approving the proposed settlement. "Public policy generally favors settlement of class action lawsuits." <u>Hainey</u>, 617 F. Supp.2d at 679. The settlement would avoid prolonged litigation, resulting in the conservation of both the parties' resources and the Court's resources. <u>See In re Telectronics Pacing Sys., Inc.</u>, 137 F. Supp.2d at 1025 (finding the settlement was in the public interest because, <u>inter alia</u>, "it frees ... the valuable judicial resources of this Court"). Further, the public interest is served by providing a certain monetary award to class members who had an unanticipated loss of employment and may have experienced financial hardship as a result. Based upon the foregoing, this factor weighs in favor of final approval of the proposed settlement.

H. <u>Summary</u>

This Court has reviewed and considered the record in this case, including the representations made by counsel at the December 16, 2015 fairness hearing. Consistent with Fed. R. Civ. P. 23(e), the Court finds that the proposed settlement is fair, reasonable, and adequate. As set forth above, the Court has considered the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery engaged in by the parties, the likelihood of success on the merits, the opinions of class counsel and the class representative, the reaction of the absent class members, and the public interest, and it finds that all seven factors weigh in favor of final approval of the proposed settlement. Thus, this Court finds that the settlement agreement is fair, reasonable, and adequate and that approval is in the best interest of the class. The Court will now examine the reasonableness of the attorneys' fees set forth in the settlement agreement.

9

III. <u>Attorneys' Fees</u>

The settlement agreement provides that class counsel shall receive one-third of the settlement amount once a service fee is paid to the class representative.  Consequently, counsel will receive one-third of $48,000.00, which is $16,000.00.  This Court must determine whether that amount of attorneys' fees is fair and reasonable under the circumstances of this case.  <u>See Moulton v. United States Steel Co.</u>, 581 F.3d 344, 352 (6th Cir. 2009). Although the Court is given great deference in granting an award for attorneys' fees, it must set forth its reasons for "adopting a particular methodology and the factors considered in arriving at the fee."  <u>Id.</u>, quoting <u>Rawlings v. Prudential-Bache Prop., Inc.</u>, 9 F.3d 513, 516 (6th Cir. 1993).

A. <u>The Methodology</u>

As set forth above, the settlement agreement uses the percentage of the fund method for calculating the award of attorneys' fees.  As Ms. Mees' brief points out, many courts within the Sixth Circuit have accepted this method for calculating the award of attorneys' fees, with the percentage "typically ranging from 20 to 50 percent of the fund." (Doc. 44 at 13), quoting <u>In re Rio Hair Naturalizer Prods. Liab. Litig.</u>, 1996 WL 780512, at *16 (E.D. Mich. Dec. 20, 1996); <u>see also In re Dun & Bradstreet Credit Servs. Customer Litig.</u>, 130 F.R.D. 366, 372 (S.D. Ohio 1990)("Fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created"); <u>but see In re Telectronics Pacing Sys., Inc.</u>, 137 F. Supp.2d at 1042 (accepting the "percentage-of-the-fund" method, but noting that "the fee percentages range from 10 to 30 percent (10%-30%) of the common fund created").  Ms. Mees adds, and this Court agrees, that an attorneys' fee award of one-third of the fund is common in WARN Act class action

10

settlements.  See, e.g., Guippone v. BH S&B Holdings, LLC, 2011
WL 5148650, at *9 (S.D.N.Y. Oct. 28, 2011)("in more than 30 WARN
actions class counsel was awarded a one-third fee").  Given that
the percentage of the fund method has been accepted within the
Sixth Circuit for calculating an award of attorneys' fees, the
Court will accept that method.  Further, because the one-third
fee requested falls within the typical range for all cases, and
particularly for WARN Act cases, the Court will adopt that
methodology for calculating the attorneys' fee award in this
case.  The Court now turns to the factors considered in arriving
at the fee.

B. Factors in Arriving at the Fee

In determining if a requested attorneys' fee award is fair,
courts often addresses the following factors:  "(1) the value of
the benefit rendered to the plaintiff class; (2) the value of the
services on an hourly basis; (3) whether the services were
undertaken on a contingent fee basis; (4) society's stake in
rewarding attorneys who produce such benefits in order to
maintain an incentive to others; (5) the complexity of the
litigation; and (6) the professional skill and standing of
counsel involved on both sides."  Id., quoting Bowling v. Pfizer,
Inc., 102 F.3d 777, 780 (6th Cir. 1996).  This Court addresses
each factor in turn.

1. The Value of the Benefit Rendered to the Plaintiff Class

The value of the benefit rendered to the plaintiff class is
among the most important factors to be considered.  See Basile v.
Merrill Lynch, Pierce, Fenner, & Smith, Inc., 640 F. Supp. 697,
700 (S.D. Ohio 1986).  To determine the value rendered to the
settlement class, the court should analyze the merits of the case
and the risks associated with continued litigation.  See, e.g.,
In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,
2010 WL 3341200, at *10 (W.D. Ky. Aug. 23, 2010).  Here, an

11

examination of the merits of this case and the risks associated
with continued litigation demonstrates that the settlement value
is substantial.  As noted above, if Skreened were to prevail on
any of its defenses, the class would recover nothing.
Conversely, if the class prevailed on all issues in the
litigation, it would recover approximately $200,000.00.
Consequently, the $50,000.00 settlement amount represents a
reasonable outcome.  Given Skreened's current financial position,
it is also of value to the class that the settlement amount is
payable in a timely fashion.  This factor supports the
reasonableness of an award of $16,000.00 in attorneys' fees as
provided in the settlement agreement.

    2. <u>The Value of the Services on an Hourly Basis</u>

The next factor requires the Court to examine the value of
the services on an hourly basis.  The declaration of attorney M.
Vance McCrary is attached to Plaintiff's brief and offered in
support of final approval of the settlement agreement, including
attorneys' fees.  (Doc. 44, Ex. 1).  In his declaration, Mr.
McCrary states that the one-third fee of $16,000.00 would not
fully compensate counsel if they were paid at their usual hourly
rate.  According to Mr. McCrary, Ms. Mees' attorneys have spent
135 hours litigating this matter, representing approximately
$70,000.00 in attorney time billed at their hourly rates.  <u>Id</u>. at
¶28.  Mr. McCrary attached time summary sheets reflecting the
hours billed to his declaration as Exhibit A.  Further, Mr.
McCrary projects that counsel will expend "at least another
$5,000.00-$10,000.00 of attorney time, beyond what has been
accounted for so far" for work related to the fairness hearing,
handling questions from class members, and preparing and
distributing the settlement distributions.  <u>Id</u>.  Mr. McCrary also
states that, as of December 10, 2015, counsel had incurred
reasonable costs and expenses in litigating this case equal to

$5,725.90.  Id. at ¶29.  These costs and expenses are also
detailed in Exhibit A attached to Mr. McCrary's declaration.
They also incurred costs and expenses related to travel and
lodging for the December 16, 2015 fairness hearing.  Based upon
the foregoing, the Court finds that the award of $16,000.00 in
attorneys' fees provided in the settlement agreement is far less
than the value of the services that Plaintiff's attorneys
expended on an hourly basis litigating this case.  The Court also
notes that class members were notified of the attorneys' fees in
the notice of the proposed settlement, and no class member
objected.  Thus, this factor also supports the award of
$16,000.00 in attorneys' fees as provided in the settlement
agreement.

> 3.  Whether the Services Were Undertaken on a
> Contingent Fee Basis

As this Court has recognized, "contingency fee arrangements
indicate that there is a certain degree of risk in obtaining a
recovery."  In re Telectronics Pacing Sys., Inc., 137 F. Supp.2d
at 1043 (Spiegel, J.).  Counsel agreed to litigate this case on a
contingent fee basis.  As Ms. Mees explains, both she and her
counsel have expected that her counsel would be paid a percentage
of any fund created in this case.  She adds that "as is typical
of this type of work, [her] counsel has worked for nearly two
years without any compensation at all and with the very real risk
that they may never be paid for the work, unless they were
successful."  (Doc. 44 at 16).  This factor supports the
reasonableness of $16,000.00 in attorneys' fees.

> 4.  Society's Stake in Rewarding Attorneys Who Produce Such
> Benefits in Order to Maintain an Incentive to Others

As explained above, counsel have secured a benefit for Ms.
Mees and other class members.  There is a public interest in
ensuring that counsel willing to represent employees in WARN Act

13

litigation are paid adequately so that other attorneys will have
an incentive to act as counsel in such cases.  See, e.g., Rankin
v. Rots, 2006 WL 1791377, at *2 (E.D. Mich. June 27, 2006)("there
is a public interest in ensuring that attorneys [are] willing to
represent employees in ERISA litigation").  In addition, adequate
"compensatory fee awards in successful class actions promote
private enforcement of and compliance with important areas of
federal law," such as the WARN Act.  See id., citing Bateman
Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310 (1985);
see also Lonardo v. Travelers Indem. Co., 706 F. Supp.2d 766
(N.D. Ohio 2010) ("the Court must ensure that Class Counsel is
fairly compensated in order to facilitate the goal of class
actions — i.e., to provide a vehicle for collective action to
pursue redress for tortious conduct that it is not feasible for
an individual litigant to pursue").  For these reasons, this
factor supports the reasonableness of $16,000.00 in attorneys'
fees.

### 5. The Complexity of the Litigation

As noted above, the issues in this case are complex.  In
particular, there are several issues concerning the applicability
of the WARN Act and whether Skreened had valid defenses to the
claims asserted.  Thus, this factor supports the reasonableness
of $16,000.00 in attorneys' fees.

### 6. The Professional Skill and Standing of Counsel Involved on Both Sides

The brief filed in support of final approval of the
preliminarily approved class settlement agreement and Mr.
McCrary's declaration make clear that counsel involved on both
sides of this litigation are experienced and knowledgeable in
WARN Act litigation, are skilled, and are in good standing.  In
addition, "[t]he ability ... to negotiate a favorable settlement
in the face of formidable legal opposition further evidences the

14

reasonableness of the fee award requested." <u>Dick v. Sprint Communications Co. L.P.</u>, 297 F.R.D. 283 (W.D. Ky. 2014), <u>quoting In re Delphi Corp. Sec., Derivative & "ERISA" Litig.</u>, 248 F.R.D. 483, 504 (E.D. Mich. 2008). The professional skill and standing of counsel involved on both sides supports the reasonableness of $16,000.00 in attorneys' fees.

C. <u>Summary</u>

As set forth above, the Court will adopt the percentage of the fund method for calculating the award of attorneys' fees. More specifically, the Court will adopt the one-third fee set forth in the settlement agreement, which will result in attorneys' fees in the amount of $16,000.00. In addition, the Court has considered the value of the benefit rendered to the plaintiff class, the value of the services on an hourly basis, whether the services were undertaken on a contingent fee basis, society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, the complexity of the litigation, and the professional skill and standing of counsel involved on both sides and finds that each of these factors supports the reasonableness of $16,000.00 in attorneys' fees in this case.

IV. <u>Conclusion</u>

For the reasons set forth above, this Court recommends that final settlement approval be granted.

V. <u>Procedure on Objections to Report and Recommendation</u>

If any party objects to this Report and Recommendation that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or

15

recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge